# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRIAN J. BAKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-10-278-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Brian J. Baker requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born March 20, 1981, and was twenty-eight years old at the time of his most recent administrative hearing. (Tr. 535). He completed the eighth or ninth grade and attended special education classes while in school (Tr. 108), and has worked as a feed mill helper (Tr. 525). The claimant alleges that he has been unable to work since birth due to his bipolar disorder and ADHD. (Tr. 89).

### Procedural History

On January 26, 2007, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85.His application was denied. ALJ Lantz McClain conducted two administrative hearings and determined that the claimant was not disabled in a written opinion dated December 18, 2009. (Tr. 15-27). The Appeals Council then denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform less than the full range of light work as defined in 20 C.F.R. § 416.967(b), *i. e.*, he could lift 20 pounds occasionally or 10 pounds frequently and stand/walk/sit for 6 hours in an 8-hour workday, but could perform only simple, repetitive tasks and have only incidental contact with the public. (Tr. 20). The ALJ concluded that although the claimant could not return

to his past relevant work, he was nevertheless not disabled because there was work he could perform in the regional and national economies, *e. g.*, sorter, hand packager, miscellaneous hand worker. (Tr. 27).

**Review**

The claimant contends that the ALJ erred: (i) by improperly determining that the claimant's impairments did not meet a listing; (ii) by failing to properly consider an "other source" opinion, specifically the RFC assessment of the claimant's therapist Ms. Dorothy Hurley; and (iii) by failing to properly consider the medical opinions of record. The Court finds the claimant's second contention persuasive for the following reasons.

Ms. Hurley was among the individuals who assessed the claimant's mental health. She met with the claimant at Bill Willis Mental Health Center regularly from September 2008 to November 2009. Her treatment notes indicate that the claimant would sometimes take his medication as directed, but often did not, and that she worked with him frequently on his anger and anxiety, but he denied suicidal ideations. (Tr. 305-307, 309, 311, 313-314). Ms. Hurley further stated that the claimant was responding "reluctantly" to treatment, but doing well and receiving education on his anger issues and developing coping skills. (Tr. 311). Even though he was responding to treatment and reported the medications were helping him, Dr. M. Mays at Bill Willis noted that the claimant was still hitting walls and his girlfriend in his sleep, and that he still sees little munchkin people. While he sometimes reported zero suicidal ideations, other times he reported some, because he believed his girlfriend was cheating on him, he did not have custody of his daughter, and he was drinking alcohol. (Tr. 308, 310). Additionally, Ms. Hurley

completed a Mental Residual Functional Capacity Questionnaire on August 10, 2009. (Tr. 282 -286). In her mental RFC evaluation, Ms. Hurley diagnosed the claimant with polysubstance dependence (denies recent use), paranoia NOS, borderline intellectual functioning, severe with poor social function and angry response to paranoid thoughts, and a Global Assessment of Functioning of 68. (Tr. 282). She found that the claimant's prognosis was unchangeable, based on his below-average level of functioning due to impaired thinking that caused a frequent or consistent interference with his daily life. (Tr. 282). She identified twenty different signs and symptoms, and found that the claimant was almost entirely either seriously limited, but not precluded, or unable to meet all competitive standards for unskilled work. In support of this conclusion, she cited the claimant's intellectual functioning, substitution of fantasy for reality, and impaired thinking that frequently or consistently interfered with his daily life. (Tr. 283-284). As to the claimant's intellectual functioning, Ms. Hurley noted that the claimant had up to an eighth grade education characterized by special education classes, and that the claimant had been held back in kindergarten twice. (Tr. 285). She thus concluded that the claimant's impairments would cause him to be absent from work more than four days a month, that his impairment had lasted or would last more than twelve months, and that the claimant was not a malingerer. In support, she stated, "Clt has long [history] of neg. interpretation of his interactions with people. Responds w/paranoia & subsequent anger." (Tr. 286).

The claimant testified at the administrative hearing that he does not like to be around people, that he has been told he has bipolar disorder and borderline intellectual

functioning, and that he sometimes struggles to concentrate. (Tr. 505-507). The claimant's attorney noted that the claimant had been fired from 16-18 jobs, and the claimant explained it was due to confrontations with supervisors, co-workers, or customers. (Tr. 507). At the time of his first hearing on November 7, 2008, the claimant was living in a tent on a friend's property, bathing approximately three times a week, and surviving on food stamps. (Tr. 508-509). Additionally, the claimant testified that he had shattered his ankle while working at a grain coop. (Tr. 511-513). As to the effects of his impairments, the claimant testified that he cuts himself to make himself feel better, he has fun either watching television whenever he can or killing cats, that he does not sleep well due to nightmares, and that he has made up to thirty suicide attempts. (Tr. 514-517, 523). Further, the claimant testified that he does not drive because he would "run over anybody I could" if they made him angry. (Tr. 524). At the August 13, 2009 administrative hearing, the claimant testified that he lived in a trailer with his fiancée, that he was still having hallucinations, and that for fun he punches trees or a punching bag. (Tr. 536, 542-543). Additionally, the claimant testified that his hands occasionally lock up and he drops things. (Tr. 545).

Social security regulations provide for the proper consideration of "other source" opinions such as the one provided by Ms. Hurley herein. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" and by considering 20 C.F.R. §§ 404.1527, 416.927 factors in determining the weight of these opinions), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *1; Soc.

Sec. Rul. 06-03p, 2006 WL 2329939 at *6 (discussing considerations of evidence from sources who are not acceptable medical sources and stating that "[a]lthough there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). The relevant factors for evaluating opinion evidence from other sources are: (i) the length of the relationship and frequency of contact; (ii) whether the opinion is consistent with other evidence; (iii) the extent the source provides relevant supporting evidence; (iv) how well the source's opinion is explained; (v) whether the claimant's impairment is related to a source's specialty or area of expertise; and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06-03p at *4-5; 20 C.F.R. §§ 404.1527(d), 416.927(d).

In his written opinion, the ALJ summarized Ms. Hurley's treatment notes and assessment of the claimant, but made no further mention of them. (Tr. 23). The ALJ also mentioned Soc. Sec. Rul. 06-03p but failed to discuss any of the factors in connection with the medical evidence, so it is unclear whether he considered them in evaluating Ms. Hurley's assessment of the claimant's condition. *See, e. g., Anderson v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation.").

Because the ALJ failed to properly consider the "other source" opinions provided by Ms. Hurley, the decision of the Commissioner should therefore be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

**Conclusion**

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 20th day of March, 2012.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma